UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CARLTON RICHIE,

    Plaintiff,

v.                                  2:09cv390

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Carlton Richie ("Richie or "plaintiff") brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability, and supplemental security income ("SSI") under Title XVI of the Social Security Act. By order filed December 30, 2009, this action was referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

### I. PROCEDURAL BACKGROUND

On May 18, 2005, Richie filed an application for SSI, alleging disability beginning July 1, 1996, due to a variety of impairments, including coronary artery disease and peripheral arterial disease, which principally affected his legs. (R. 72, 78). The Commissioner denied his application initially (R. 49 - 51), and upon reconsideration, (R. 42 - 44 ). Richie made a timely

1

request for an administrative hearing, (R. 38), which was conducted February 23, 2007. (R. 642 - 54).

On April 6, 2007, Administrative Law Judge ("ALJ") Harry H. Barr found that plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim for SSI. (R. 13 - 24). On June 10, 2009, the Appeals Council denied review of the ALJ's decision (R. 6 - 8), thereby making the ALJ's decision the final decision of the Commissioner.

Although not raised by either party, the Administrative Record also indicates that Richie filed a second application for benefits on April 26, 2007, which apparently also progressed to the hearing stage and was heard by a different ALJ on October 27, 2008. (R. 655 – 669). Pursuant to this second application, which arose after the date of the ALJ's opinion, Richie was found to be disabled as of April 26, 2007. (R. 7). The Appeals Council considered the later finding of disability in denying review, but concluded that this information did not warrant any change in the ALJ's decision in the case currently under review by this Court. (R. 7).[1]

Pursuant to 42 U.S.C. § 1383(c)(3), on June 10, 2009, Richie filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court for disposition of the parties' cross-motions for summary judgment.

---

[1] Richie has not raised the subsequent finding of disability as a basis for remand. See Hayes v. Astrue, 488 F. Supp. 2d 560 (W.D. Va. 2007), Casar v. Astrue, No. 7:07cv152, 2008 WL 2276958 (W.D. Va. June 3, 2008) (holding that a later finding of disability on a second application may warrant remand of recent previous finding of no disability). In addition, the motion for summary judgment does not mention any evidence submitted during the later proceeding which was omitted from the first. As a result, the undersigned has not considered the later finding of disability as new and material evidence warranting remand. See Allen v. Commissioner, 561 F. 3d 646, 654 (6th Cir. 2009) (rejecting Hayes, and concluding that later determination of disability alone does not merit remand in the absence of additional new and material evidence).

## II. FACTUAL BACKGROUND

Richie was forty-eight at the time of the ALJ's hearing. (R. 72). A resident of Portsmouth, he has a tenth grade education and had previously worked as a funeral helper, construction worker, laborer, and painter. (R. 79).

Although his application for SSI asserted limitations related to his vision, asthma, a previous ankle fracture, and hypertension, (R. 78) the overwhelming majority of the medical evidence related to Richie's diagnoses of angina and peripheral artery disease ("PAD").[2] The medical record reveals that Richie was diagnosed with coronary artery disease in May, 2005. (R. 186, 206). He underwent a June 2005, bypass surgery, (R. 590 – 93), and a November, 2005 cardiac catheterization, (R. 518).

In July, 2005, Richie began experiencing left calf pain, (R. 489) and was referred by his cardiologist, Dr. James E. Anderson, for angiography to evaluate his symptoms. (R. 484). According to Dr. Jun K. Chung, Anderson's partner and the treating physician reviewing the test in July 2005, Richie's angiogram at that time revealed "mild to moderate disease involving the right distal iliac/common femoral artery, 60% stenosis as well as left superficial femoral artery serial 60% to 70% stenosis". (R. 485). Dr. Chung noted that because of the "diffuse nature of the disease . . . the plan is to attempt medical therapy and conservative measures initially." (R. 485). At a follow-up appointment in October, 2005, Dr. Anderson described Richie's PAD as "lifestyle limiting" and offered medication to control his symptoms, which Richie refused stating he could not afford it. (R.

---

[2] The ALJ determined Richie's complaints of "hypertension, asthma, decreased vision, lumbar and cervical degenerative disc disease, left ankle problems and history of alcohol and cocaine abuse" were not severe impairments based on the medical evidence. (R. 18). Richie has not challenged this finding in his motion for summary judgment, and thus, the Court has omitted any extensive recitation of medical records unrelated to the claims of angina and PAD which underlie Richie's arguments on summary judgment.

3

589). Anderson wrote on the date of that visit that Richie "continues to note claudication[3] but is able to walk six blocks without stopping." (R. 587).

In December, 2005, Dr. Anderson again saw Richie and concluded that his PAD was not improving and continued to limit his lifestyle. He noted Richie's symptoms had a "variable threshold," and that sometimes Richie was able to walk only a block, but at other times he was able to walk four blocks. (R. 577). He again offered medication, which Richie again declined due to financial constraints. Anderson also suggested a second arteriogram. (R. 579).

Richie received the second arteriogram as well as follow up examinations by a vascular specialist. In March, 2006, Richie saw Dr. Chad McKenzie, D.O. who reviewed his prior test results and diagnosed "moderate to severe femoral artery disease." He suggested that the vascular disease and Richie's complaints of pain seemed to warrant surgical intervention, and encouraged Richie to discuss this with the referring provider, whom he indicated was Dr. Chung. (R. 510 – 511). The medical records do not indicate that Richie ever pursued surgical intervention or took the medication Anderson recommended for his PAD symptoms.

Dr. Anderson saw Richie again on June 7, 2006. At that time, Richie continued to complain of chest discomfort and claudication, or pain in his legs. In particular, Dr. Anderson noted that he "generally will note claudication after walking from the parking lot to our office, and continues to note chest pain with moderate activity." (R. 623). Dr. Anderson's notes for that visit

---

[3] The medical term "claudication" is used to describe "a complex of symptoms, characterized by pain, tension and weakness in a limb." It is "seen in occlusive arterial diseases of the limbs..." Dorland's Illustrated Medical Dictionary, 375 (31st ed. 2007).

4

also indicate that Richie was to see Dr. McKenzie in follow up for his PAD on the next day, but the Administrative Record does not contain any notes of whether that visit, or any subsequent visit to Dr. McKenzie occurred. Dr. Anderson prescribed additional medication to control Richie's hypertension, as well as Plavix and low-dose aspirin in an effort to improve his chest discomfort from coronary artery disease. (R. 624).

In December, 2006, Richie saw Dr. George A. Saris, M.D., a partner of Dr. Anderson's, who advised he would be assuming Richie's care. (R. 618). Dr. Saris reviewed Richie's history of PAD and his other cardiovascular conditions, and performed a physical exam. He noted that Richie had not been seen by his office since June, 2006. On his physical exam he observed Richie to be cooperative, alert, and "in no acute distress." With regard to his PAD, Saris simply noted "he was previously seeing a vascular surgeon" and that "[h]e is currently on Plavix." (R. 620). At the time Saris noted that Richie's hypertension was under better control, and that neither the exam nor Richie's complaints indicated symptoms of angina or congestive heart failure. (R. 670). He scheduled follow up testing for a pulmonary concern, and upon review of those reports in January, 2007, scheduled a routine follow up in November of that year. (R. 617). This January note is the last record of treatment in the Administrative Record prior to the hearing before the ALJ in early April, 2007.

In January, 2006, in connection with his application for SSI, Richie saw Mark Glickman, M.D., at the request of the Virginia Department of Rehabilitative Services. Dr. Glickman examined Richie and reviewed records, including the arteriogram from December, 2005. (R. 498).

He concluded that Richie had normal circulation in his left leg, and "mild occlusive disease in his right leg." (R. 499). Dr. Glickman did not opine as to any limitations imposed by Richie's right leg condition.

On January 26, 2006, Richie saw Dr. Zubair Latiff for a disability determination evaluation. Dr. Latiff also reviewed the records of Richie's prior treatment and performed an extensive physical examination, including various range of motion tests. (R. 501 – 502). He stated that Richie had "no abnormality of the gait or station." (R. 503). Although Riche arrived for his evaluation using crutches, Dr. Latiff's physical exam led him to opine that Richie could stand and walk for two to three hours out of an eight hour day, and could lift and carry ten pounds occasionally. (R. 505). He noted Richie might have difficulty bending, kneeling, stooping, crawling, and climbing because of his vascular disease. Dr. Latiff did believe crutches would facilitate walking long distances but found Riche could walk shorter distances without assistance. He also found Richie had no limitation in his range of motion. (R. 505).

In connection with the hearing process, Richie also underwent a residual functional capacity evaluation by Dr. Robert F. Castle, M.D. Dr. Castle reviewed Richie's medical records, including the second arteriogram and the notes of Richie's treating physicians interpreting that test. He also reviewed the detailed observations made by Dr. Latiff. He also sent Richie for additional testing related to his vascular disease. Like Dr. Latiff, he concluded that Richie could lift and carry ten pounds and could stand and walk two hours out of an eight hour day and sit with normal breaks for up to six hours in an eight hour day. He found no manipulative, vision, or communication limitations and concluded that Richie was capable of performing sedentary work. (R. 549 – 552).

He found Richie might need a cane to ambulate as a result of his prior ankle fracture but did not agree that he would need crutches as suggested by Dr. Latiff. (R. 552).

After reviewing the evidence and Richie's testimony, the ALJ concluded that he had the RFC to perform sedentary work, and was therefore not disabled. Richie's appeal to this Court argues the ALJ failed to give appropriate weight to the opinions of Dr. Anderson, and failed to consider Dr. McKenzie's diagnosis of femoral artery disease. He also claims that substantial evidence in the record would support a finding that he was totally disabled.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the

ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. §§ 1382(a) and (b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. §§ 1381(a) and 1382(c).

> The Social Security Regulations define "disability" as the:
>
> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

8

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

A. <u>ALJ's Decision</u>

In the present case, the ALJ made the following findings under the five-part analysis: (1) The ALJ reserved any finding on whether Richie had engaged in substantial gainful activity for more than a twelve-month period after July 1, 1996 (the alleged onset date of disability)[4]; (2) Richie had severe impairments of coronary artery disease and peripheral artery disease; (3) his impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) Richie was unable to perform past relevant work, but had the RFC to perform sedentary work that did not involve lifting more than ten pounds and only occasional walking and standing; and (5) there are jobs that exist in significant numbers in the national economy that Richie can perform. (R. 18 - 24).

B. <u>The ALJ adequately explained the weight he assigned to medical opinions.</u>

Where, as here, the claimant establishes that he suffers from a severe impairment, that does not meet the criteria of a listed impairment, the ALJ must determine the claimant's RFC, which is the claimant's maximum ability to work despite his limitations. 20 C.F.R. §§ 404.1545(a) and 416.945(a)(1). The ALJ then uses that RFC to determine whether the claimant can perform his past relevant work. <u>Id.</u> at § 416.945(a)(5)(i). The determination of RFC is based on consideration

---

[4] The ALJ noted that the evidence supported unreported earnings from self employment after the alleged onset date but curtailed any analysis of whether these earnings amounted to substantial gainful activity due to his finding that Richie was not disabled. (R. 18).

of all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(1)[5].

In the present case, the ALJ found that Richie had the RFC to perform sedentary work. In making the RFC determination, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. Generally, the opinion of a treating physician is accorded more weight than that of a non-examining consultant. 20 C.F.R. § 416.927(d)(1). Under the federal regulations and Fourth Circuit caselaw, a treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. at §§ 416.927(d)(2) and 1527(d)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. When the evidence is such that reasonable minds could differ as to whether a claimant is disabled, the ALJ, and ultimately the Commissioner, must resolve any inconsistencies in the evidence. Johnson v. Barnhart, 434 F. 3d 650, 653 (4th Cir. 2005).

On summary judgment Richie argues that the ALJ erred in failing to give appropriate weight to the opinion of Dr. Anderson, who was his cardiologist from May, 2005 until September, 2006. In particular, Dr. Anderson wrote a letter on September 5, 2006 directed "To Whom It May Concern" in which he opined that Richie was "unable to work" due to his "anginal symptoms as well

---

[5] "Other evidence" includes statements or reports from the claimant, the claimant's treating or nontreating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

11

as significant bilateral calf claudication." Although the letter describes Richie's history of cardiac and vascular problems, it contains no objective description of the physical limitations they impose. Also, the letter does not address any particular type of work – and the Commissioner argues that Anderson's opinion must be limited to Richie's past work as a construction worker and laborer, as reflected in Anderson's treatment notes.

After reviewing the letter, the medical records of Dr. Anderson's treatment prior to the letter, and the ALJ's opinion, the Court finds that the opinion adequately explained the weight assigned to Dr. Anderson's letter. The ALJ considered in detail Dr. Anderson's treatment records, as well as his September 5, 2006 letter, but concluded that Anderson's opinion of Richie's ability to work was entitled to "minimal weight." He noted, however, that he agreed with "references in the treatment notes that indicate that the claimant cannot perform construction work." (R. 22), (citing treatment notes by exhibit number indicating that "patient will be unable to work at this time as he is a self-employed construction worker who is limited by angina, dyspnea and claudication" (R. 558)).

Because Dr. Anderson is a treating physician whose opinion was not entitled to controlling weight, the ALJ must articulate "good reasons" for his decision as to the weight accorded to the opinion. 20 C.F.R. § 416.927(d)(2). When the ALJ's decision is not fully favorable to the claimant, it must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR 96-2P, 1996 WL 374188, at *5 (S.S.A.).

Here, the ALJ noted that Dr. Anderson's opinion was based on prior treatment, and not a contemporaneous exam. He observed that Dr. Anderson's last examination of Richie was in

June, 2006. He also stated the opinion was "inconsistent with other substantial evidence in the record." During the June, 2006 visit, Dr. Anderson found Richie's symptoms "suggestive of exertional angina" and prescribed medications directed at addressing those symptoms. (R. 624). The ALJ noted that Richie's care had been assumed after the September 5, 2006 letter, by Dr. George A. Saris. Dr. Saris, examined Richie in December, 2006 (after Dr. Anderson's letter but before the hearing). On that visit, both Richie's presentation and Dr. Saris' examination disclosed no symptoms of angina or congestive heart failure. Dr. Saris found Richie to be in no acute distress, recommended no change in his current medications or treatment, and scheduled him for routine follow up in six months. (R. 619 – 20). These records adequately support the ALJ's decision not to afford Dr. Anderson's opinion controlling weight. In addition, the detailed analysis contained in the ALJ's opinion adequately explained the reasons why he was affording Anderson's opinion of September 5, 2006 "minimal weight".

C. **The ALJ considered all of the medical evidence.**

Richie also claims that the ALJ incorrectly applied the law because he did not mention the opinion of Dr. Chad McKenzie in his written findings. Dr. McKenzie briefly consulted with Dr. Chung regarding Richie's diagnosis of PAD. According to Richie, the ALJ's failure to mention Dr. McKenzie's diagnosis of femoral artery disease requires remand for the ALJ to evaluate "how this diagnosis would impact the plaintiff's ability to engage in full time employment." (Plaintiff's Reply, p. 4).

Dr. McKenzie examined Richie and reviewed one of his arteriograms on March 9, 2006, at the request of Dr. Chung. The record appears to contain only one note from Dr. McKenzie's file, which relates to his interpretation of the second arteriogram and suggests further follow-up with

Dr. Chung. (R. 509 – 511). The ALJ explicitly considered Dr. McKenzie's diagnosis along with other similar records which he cited in his opinion. (R. 18) (citing McKenzie's notes at Ex. 12-F). Moreover, Dr. McKenzie's findings were consistent with those of Dr. Chung and Dr. Anderson and were therefore addressed by the ALJ's finding that Richie had severe impairments that prevented him from performing his previous work. Having reviewed the entire record, including numerous references to the vascular disease described by Dr. McKenzie, the ALJ adequately considered the medical evidence before him.

Finally, Richie contends that the record contains substantial evidence that he was totally disabled from full-time employment. However, in the absence of some error by the ALJ in applying the law, the question for this Court is not whether there is substantial evidence of disability, but whether there is substantial evidence to support the Commissioner's contrary finding. The Court finds that there was substantial evidence on the record before him on April 7, 2007, to support the ALJ's decision. In addition to the improvement in Richie's exertional angina described by Dr. Saris in December 2006, the ALJ was entitled to rely upon the physical examination performed by Dr. Latiff and the disability determination of Dr. Castle, both of which concluded that Riche had the physical and mental abilities necessary to perform sedentary work.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's motion for summary judgment be GRANTED, Richie's motion for summary judgment be DENIED, and that the final decision of the Commissioner be AFFIRMED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 16, 2010

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following: (via ECF)

Barrett Rives Richardson, Jr.
Richardson & Rosenberg, LLC
Suite 814
355 Crawford Street
P. O. Box 201
Portsmouth, VA 23705

Susan L. Watt
United States Attorney's Office
101 W. Main St., Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

Deputy Clerk

July 16, 2010